UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTONIO PRATT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CMRE FINANCIAL SERVICES, INC., )<br>)<br>Defendant. ) | Case No. 4:10-CV-2332 (CEJ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment. Plaintiff has filed a response in opposition and the issues are fully briefed.

Plaintiff Antonio Pratt alleges that defendant CMRE Financial Services, Inc. violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692d, by repeatedly calling his cell phone after he informed defendant that he was not, and did not know, the debtor it was seeking. He seeks statutory damages and attorney's fees. Defendant denies that it engaged in harassing conduct and asserts that plaintiff never informed defendant that it was dialing a wrong number.

I.   **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of

showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

II. **Background**

Defendant CMRE provides debt collection services to providers of consumer goods and services in the St. Louis area. On May 14, 2010, Clayton Emergency Group, LLC, retained CMRE to collect an outstanding debt from someone other than plaintiff. The phone number Clayton Emergency Group provided to defendant CMRE was assigned to plaintiff's cell phone. Plaintiff alleges that beginning in July 2010 he received approximately 65 automated telephone collection calls from defendant seeking "Angela Jackson" or "Angela Johnson." The parties agree that plaintiff does not owe the debt to Clayton Emergency Group.

Andrea Livingston Parr, corporate secretary and director of legal affairs for defendant, has submitted an affidavit regarding defendant's telephone collection system. Defendant places calls through an "autodialer" operated by a company called

Global Connect. Defendant uploads names and phone numbers into the autodialer queue and Global Connect generates automated telephone calls. When the autodialer places a call, a prerecorded message plays, stating, "if you are [intended person], please press 'one' to speak with a live agent." The call recipient is instructed to press the "5" key if he or she is not the intended person, at which point the autodialer hangs up and the call is tried again at a different date. The automated message does not tell recipients what to do if the call has been placed to them in error.

In his declaration, plaintiff states that he received calls from defendant from June 2010 through February 1, 2011. During most of that time he received two calls per week, although sometimes the calls were more frequent. His "best recollection and estimate" is that he received "at least 65-70 collection phone calls" from defendant. Plaintiff usually answered the calls; he did not answer calls that came while he was at work. Plaintiff's phone was equipped with a feature that enabled him to identify the defendant as the caller without answering his phone. When plaintiff answered the calls, he heard the automated message stating that the caller was looking for Angela Johnson or Angela Jackson. Plaintiff does not know anyone who goes by either name.

Plaintiff sometimes pressed the "5" key on his phone and was disconnected. More than half of the time, he pressed "1" to be connected to a live agent, even though he was not the person being sought. Sometimes he was placed on hold for long periods of time until he either hung up or received a recorded message saying that someone would call him back. Plaintiff states that he was connected to a live agent at least 30 times, beginning with the first call he received in June 2010. On each occasion, he told the agent that he did not know Angela Johnson or Angela Jackson and that the defendant had the wrong number. On many of these occasions, the agent assured him that the calls would stop. Plaintiff also called defendant on eight occasions to state that he did not know Angela Johnson or Angela Jackson. He instructed the agents with whom he spoke to stop calling. Plaintiff states that he always asked the agents with whom he spoke for the name of their supervisor; in response the agents "generally" asserted that "there was no need for that, and simply terminate[d] the call." Plaintiff filed this action on December 14, 2010. The calls continued until February 1, 2011, when he changed his phone number.

Defendant submits Global Connect's call log for plaintiff's phone number. The call log list 25 entries between August 10, 2010 and February 1, 2011. The entries show the date and time on which a call was placed and a "result": "answered," "canceled," "machine," "busy" or "doNotCall." For those calls that were answered, another entry shows whether a key was pressed and, if so, which one. The duration of each call also appears. Ms. Parr testified that the notations "canceled" and "doNotCall" indicate merely that a call placed in the autodialer queue was not made, frequently because a successful call had been placed to the same number within the previous 72 hours. All such notations in the call log are consistent with this testimony.

Defendant also submits the "debtor work card" it maintained for the debt it was attempting to collect. The work card entries do not exactly correspond to those in Global Connect's call log. Ms. Parr testifies that CMRE employees make entries in the work card when they receive relevant data. Autodialer information from Global Connect is typically received and entered the day after a call is placed.[1] Entries based on an agent's personal communication with a person are typically entered at the time and date of the actual communication.

The work card documents the "new assignment" of the collection case on May 14, 2010. The work card reflects 10 calls to plaintiff's phone between August 11, 2010 and January 7, 2011. An entry dated February 1, 2011, indicates that the phone number was being removed from the account because "we are being sued by an individual that owns this telephone number via his cell// he is not and does not know" the debtor. Plaintiff's number was placed on the "do not call" list on February 1, 2011. One more call was placed to him that afternoon; an entry in the work card indicates that this occurred because plaintiff's number was already in the autodialer queue.

Ms. Parr submits detailed commentary on 17 calls that she asserts constitute the total number of calls placed to plaintiff. She asserts that plaintiff did not press "1" to speak to a live agent until February 1, 2011. According to Ms. Parr, on that day, plaintiff told the agent to whom his call was transferred that they were calling a wrong number. The agent was unable to locate his number in the system because Ms. Parr had removed it the day before.

---

[1] Calls placed between September 21, 2010, and January 3, 2011, were not logged into the work card due to a "data entry oversight."

Plaintiff's wife states in a declaration that she witnessed her husband tell the defendant's agent that he was not the intended recipient of the calls and that the calls should stop. However, plaintiff does not appear to have any written record of his communications with defendant. On September 13, 2011, counsel for plaintiff served a subpoena on plaintiff's cell phone service provider, seeking production of all telephone records between June 2010 and June 2011. Records were returned for the month of June 2011. Counsel for plaintiff attests that he has been unable to obtain any other phone records from the provider.

III.   Discussion

The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage. 15 U.S.C. § 1692(e). Peters v. General Service Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir. 2002). The Act prohibits certain types of collection practices, such as the use or threat of violence, obscene language, publication of shame lists, and harassing or anonymous telephone calls. 15 U.S.C. § 1692d. The FDCPA also contains general prohibitions on "conduct the natural consequence of which is to harasses, oppress, or abuse any person." Peters, 277 F.3d at 1054 (quoting 15 U.S.C. § 1692d). Plaintiff brings his claim under § 1692d(5), which prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

Plaintiff alleges that defendant violated § 1692d(5) by placing an unreasonable number of calls to him and by continuing to call even after he informed defendant's agents that they were calling the wrong number. "Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also the

pattern of calls." Akalwadi v. Risk Management Alternatives, Inc., 336 F. Supp. 2d 492, 505 (D. Md. 2004). Intent may be inferred by evidence that the debt collector continued to call after being asked not to call. See Moore v. Firstsource Advantage, LLC, 2011 WL 4345703, at *14, No. 07-CV-770 (S.D.N.Y. Sept. 15, 2011) (debt collector's conduct following a verbal demand not to call may violate § 1692d); Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

There is a genuine issue of material fact with respect to the number of calls defendant made and when defendant learned that it was placing calls to the wrong number. A reasonable fact finder believing plaintiff's evidence on these issues could conclude that defendant acted with the intent to harass in violation of § 1692d. The plaintiff's inability to recall the dates and times of specific phone calls does not preclude a finding of liability, as defendant asserts, but may be relevant to plaintiff's credibility, a factor which the Court cannot consider at the summary judgment stage.

Defendant also argues that it is entitled to summary judgment because any violation was the result of a *bona fide* error. Section 1692k(c) provides:

> Intent: A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Whether this exception is established will depend in part on the disputed issues of material fact and cannot be determined at this stage.

Defendant further argues in its reply brief that it is entitled to an adverse inference based on plaintiff's failure to produce phone records to support his claim. This request will be denied. The Court must draw all inferences in plaintiff's favor at the summary judgment stage. Additionally, the Court will not consider an argument raised for the first time in a reply brief. Finally, whether the defendant is entitled to

an adverse inference is a question that is better left to be addressed later in determining the instructions to be given to the jury.

Accordingly,

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [Doc. #30] is **denied**.

This matter is set for jury trial on **Monday, March 19, 2012, at 9:00 a.m.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of January, 2012.